[No. E016724. Fourth Dist., Div. Two. Mar. 8, 1996.]

In re the Marriage of GENEROSA and MIKE H. HAVINS.
GENEROSA HAVINS, Respondent, v.
MIKE H. HAVINS, Appellant.

COUNSEL

Donald M. Magdziasz for Appellant.

Marshall Miles for Respondent.

OPINION

HOLLENHORST, J.—In this dissolution action, we hold that although a federal retiree's continuing right to renew his subsidized health insurance is property, it is not divisible community property. Accordingly, the trial court erred in finding that "the availability of long-term health insurance at reduced premiums is a divisible property asset and that said asset must be divided equally between the parties."

In addition, the trial court erred in awarding the former wife, Generosa Havins, an unspecified money judgment "for all sums wrongfully charged to her for health insurance from February 1, 1991 through the present date."

FACTS

The parties were divorced on April 6, 1990. At that time, Mr. Havins was a federal retiree receiving pension benefits from the Civil Service Retirement System and retiree health benefits from the Federal Employees' Health Benefits Program.

The dissolution judgment, which is long since final, provides that "health benefits previously elected shall remain without change. Any charges or deductions shall be from the total gross with the balance divided equally between the parties."

The judgment contemplated entry of a "qualified domestic relations order" under the Retirement Equity Act of 1984 in order to provide for direct payment of retirement benefits to each spouse. An order was entered which provided that the retirement benefits would be divided equally between the parties but that "a deduction for the [party's] health insurance premium shall be made prior to the division and payment of each [party's] 50% interest."

The order was accepted by the federal office of personnel management as a qualified order. Subsequently, the retirement system found the qualified order "too vague" to permit the deduction of the insurance premiums for the former Mrs. Havins from the annuity payable to Mr. Havins. It therefore

concluded that, unless the order was modified, such payments could only be deducted from the portion of the annuity payable to her.

The former Mrs. Havins was notified that she could enroll in the health benefits program, but that the premiums for her enrollment "will be withheld from your court ordered division of Mr. Havins's retirement benefits. We are only permitted to withhold the cost of your monthly premiums from his retirement benefits when the court order specifically dictates 'the cost of your monthly health benefits premiums are to be withheld from Mr. Havins'[s] future civil service retirement benefits.' "

The former Mrs. Havins enrolled in a Blue Cross/Blue Shield plan with a monthly premium of $146.64. The monthly premium, which represented both the enrollee share and the government share of the cost of coverage, was deducted from her apportionment payment, effective March 1, 1990.

On April 23, 1993, the former Mrs. Havins filed a request to modify the judgment of dissolution. She asked that the court order that all health insurance premiums be paid out of the gross amount of the retirement benefits, and that Mr. Havins be ordered to pay her $4,076.48, representing the amount which "he has caused to be withheld from me over the years since the entry of the Judgment."

After hearing, the trial court issued a ruling on October 19, 1994. It found that the judgment was not susceptible of any interpretation other than the interpretation suggested by the former Mrs. Havins: "all charges or deductions, including those for her health insurance premiums, be made from the total gross benefits and the balance thereafter divided equally." Nevertheless, the trial court found that "it would appear inequitable to require [Mr. Havins] to assume the added burden of picking up a portion of the added cost of [the former Mrs. Havins's] health premiums."

The court asked for further briefing and argument on the issue of whether the fact that the government subsidized Mr. Havins's health benefits was a community property benefit in which the former Mrs. Havins should share.

After further briefing, the trial court ruled on December 21, 1994, that "the availability of long-term health insurance at reduced premiums is a divisible community property asset, and the Court orders that that right be divided equally between the parties." This order was confirmed in a judgment filed June 12, 1995. In addition, the court ordered judgment for the former Mrs. Havins for "all sums wrongfully charged to her for health insurance from February 1, 1991 through the present date." Mr. Havins appeals.

## Discussion

The only issue raised on appeal arises from the contention of Mr. Havins that his right to purchase subsidized health insurance is not a divisible community property asset.[1] Mr. Havins argues that the trial court erred so finding, and in ordering a money judgment against him "for all sums wrongfully charged to [the former Mrs. Havins] for health insurance . . . ." He thus argues that a policy of health insurance is not property under California law.

The parties agree that the issue is one of first impression in California, and that the closest analogy is provided by cases which consider whether group term life insurance is a divisible community property asset. Unfortunately, the rationale and results in those cases differ widely.

### 1. *Term Life Insurance.*

Group term life insurance, like health insurance, is a typical fringe benefit provided to employees. Monthly premiums are generally required for both group term life insurance and health insurance. Term life insurance and health insurance plans are employee welfare benefit plans under the Employee Retirement Income Security Act of 1974 (ERISA). (29 U.S.C.A. § 1002(1).[2])

Mr. Havins relies on *In re Marriage of Lorenz* (1983) 146 Cal.App.3d 464 [194 Cal.Rptr. 237]. In *Lorenz*, the court found that policies of term life insurance were not community property divisible on divorce because they

---

[1] Under the federal employee benefits system, the employee has the right to enroll in an approved health benefits plan either as an individual or for self and family. (5 U.S.C.A. § 8905.) Certain retirees may continue enrollment after retirement. (*Ibid.*) The government contributes to the cost of coverage. (5 U.S.C.A. § 8906.) Mr. Havins was thus enrolled in a health benefits plan for himself and his spouse, and his employer paid part of the cost.

Upon divorce, the family member spouse becomes a former spouse. (5 U.S.C.A. § 8901(10).) The former spouse may elect to continue health care coverage "subject to agreement to pay the full subscription charge of the enrollment . . . ." (5 U.S.C.A. § 8905 (c)(1)(B).) All plan contracts must therefore contain a provision requiring the plan to offer an option to convert, without evidence of good health, to a nongroup contract. The former spouse must pay the full cost of the coverage under the nongroup contract. (5 U.S.C.A. § 8902(g).) The regulations implementing these provisions also provide that the former spouse is to pay the full cost of the benefit. (5 C.F.R. § 890.808(d) (1995).)

The former spouse of a retiree thus has the right to continued health care coverage without showing evidence of good health, but the former spouse must pay the full cost of the coverage. The former employee, Mr. Havins, retains the right to purchase subsidized health care coverage, and he has done so.

[2] The government health insurance in this case is not covered by ERISA. (29 U.S.C.A. § 1003(b)(1).)

had no cash value. The court cited *Todd* v. *Todd* (1969) 272 Cal.App.2d 786, 791 [78 Cal.Rptr. 131], in which the court held that intangible assets without value were not community property. The *Lorenz* court rejected the proposition that the term life insurance policy had a value that could be divided, saying: "The proceeds or benefits of the policy, of course, have a value. However, until those benefits are payable, the policy itself is worthless." (146 Cal.App.3d at p. 468.) The court noted other benefits or perquisites of employment are valuable to the employee because they are subsidized by the employer but are not divided upon divorce. For example, the court noted that the employee may be able to use the facilities of a health club owned by the employer, may be able to purchase meals at an employer-owned cafeteria at reduced prices, or may be entitled to a discount on purchases made at a store owned by the company. (*Id.*, at p. 467.) The court said: "All of these benefits, although of value to the employee spouse, are not convertible into cash. They are therefore, not divisible on dissolution of the marriage." (*Id.*, at pp. 467-468.) To the extent these privileges benefit the employee's spouse and family, they end upon divorce.

If, therefore, we applied the *Lorenz* rationale, we would find that Mr. Havins's right to purchase subsidized health insurance was a fringe benefit of his employment which was not divisible on dissolution as community property because it was not convertible into cash at that time.

The former Mrs. Havins argues that "[t]he right to obtain long-term health insurance at reduced premiums (because the government is paying a large portion of the premiums) is a divisible community property asset." She primarily relies on *In re Marriage of Gonzalez* (1985) 168 Cal.App.3d 1021 [214 Cal.Rptr. 634, 54 A.L.R.4th 1195].[3] In that case, the court disagreed with *Lorenz*, and held that term life insurance could be valued and was divisible upon dissolution. *Gonzalez* points out that a term life insurance policy has some economic value, i.e., it has a replacement value. (*In re Marriage of Gonzalez, supra,* 168 Cal.App.3d 1021, 1024-1025.) ". . . 'Replacement value may be significantly higher than cash surrender value in

---

[3]The *Gonzalez* court and the former Mrs. Havins also cite *Biltoft* v. *Wootten* (1979) 96 Cal.App.3d 58 [157 Cal.Rptr. 581]. In that case, the issue was the division of proceeds of a term life insurance policy between the former wife and the decedent's children. This court found that apportionment of the proceeds was proper because the benefits were derived from the contract which had its inception during the marriage, and the benefits were preserved by the payment of the premiums out of community property funds during the nearly 20 years of the marriage. Thus, we found that the proceeds of the policy must be apportioned between community and separate property. We agree that the term insurance policy had some of the same attributes, such as guaranteed renewability, as the health insurance here. However, the case is not helpful beyond that because it dealt with the division of the proceeds of the policy upon death. (See also *Bowman* v. *Bowman* (1985) 171 Cal.App.3d 148, 159 [217 Cal.Rptr. 174].)

situations where the insurability of the insured is lessened because of advancing age or declining health, and the existing policy cannot be cancelled or contains a guaranty of insurability.' " (*Id.*, at p. 1025.)

If we were to follow *Gonzalez*, we would find that Mr. Havins's right to obtain a subsidized health insurance policy has some economic value that should have been taken into account in the division of community property. The former Mrs. Havins urges that the cash value is the difference between what Mr. Havins would have to pay for his coverage on the open market and the premium he is actually paying. She would thus divide the value of his right as a community property asset.

In *Estate of Logan* (1987) 191 Cal.App.3d 319 [236 Cal.Rptr. 368], the court held that "a term life insurance policy upon the life of one spouse is not divisible as community property under the Family Law Act, even though premiums for the policy before separation were paid with community property funds. An exception will arise if the insured spouse becomes uninsurable during the term paid with community funds, since the right to continued coverage upon payment of future premiums is a valuable community property asset for one who is uninsurable. If the insured dies during the term paid with community funds, the proceeds of the policy are community property. When premiums for a new term have been paid from postseparation separate property earnings and the insured remains insurable, the policy must be confirmed to the insured as separate property." (*Id.*, at p. 321.)

*Logan* thus disagrees with *Gonzalez*. It finds that ". . . term life insurance covering a spouse who remains insurable is community property only for the period beyond the date of separation for which community funds were used to pay the premium." (*Estate of Logan, supra,* 191 Cal.App.3d 319, 325.) In reaching this conclusion, the court discusses two elements of term life insurance, dollar coverage and renewal rights. As the court notes, the dollar coverage aspect is the same in term life insurance and health insurance: "[T]erm life insurance simply provides for protection against the contingency of the death of the insured during the term of the policy. If the premium for the next term is not paid, the policy is not renewed. In this respect, it is the same as automobile or health insurance. Thus when the premium is paid with community funds, the policy is community property for the period covered by that premium. This is true whether the premium is paid as a fringe benefit by the insured's employer, paid for by the insured, or a combination of both. The policy provides dollar coverage only for the specific term for which the premium was paid. Thus, as to dollar coverage, term life insurance upon which premiums were paid from community funds has no value after the term has ended without the insured having become deceased." (*Id.*, at p. 324, fn. omitted.)

The court also finds that the second element of term life insurance, renewal rights, "has either a significant value or no value at all. The right to renewal upon payment of the premium for the next term is significant because the insured possesses the right even if he or she has become uninsurable in the meantime." (*Estate of Logan, supra*, 191 Cal.App.3d 319, 324.) The court also notes that the renewed policy is separate property because it was purchased with separate earnings or provided by the employer as a postseparation fringe benefit. (*Id.*, at pp. 324-325.) Under this rationale, the term life insurance policy has no value so long as the insured was insurable at the time of renewal.

If we apply the *Logan* rationale to health insurance, we would find that Mr. Havins's health insurance had no value at the time of dissolution because it was subsequently renewed by Mr. Havins by his monthly payments of premiums from his postseparation separate property.

The most recent term life insurance case is *In re Marriage of Spengler* (1992) 5 Cal.App.4th 288 [6 Cal.Rptr.2d 764]. In *Spengler*, the former wife claimed a community property interest in the proceeds of a term life insurance policy on the life of her former husband. The issue was whether the policy's provision of a right to renewed coverage without proof of current insurability is a valuable community property asset subject to division in a marital dissolution proceeding where the insured has become uninsurable during the marriage. The court found that the policy was not a community property asset beyond expiration of the term acquired with community efforts. After discussing *Lorenz* and *Gonzalez*, the court followed the holding of *Estate of Logan, supra*, 191 Cal.App.3d 319, that, as long as the insured spouse remains insurable, term life insurance has no divisible community property value upon expiration of the term acquired with community funds and/or efforts. (*In re Marriage of Spengler, supra*, 5 Cal.App.4th 288, 293.)

The *Spengler* court disagreed with dicta in *Logan* suggesting an exception to the rule when the insured spouse becomes uninsurable during the marriage. Focusing on whether the right to renew the policy was community property, the court found that the right to continued insurance was dependent upon the employee's continued employment and the employer's continuation of the policy as an employee fringe benefit. While acknowledging that many fringe benefits become contract rights that are subject to allocation at the time of dissolution, the court nevertheless found that the renewal right was a mere expectancy rather than a contingent property interest. The court said: "[W]hile the renewal right has potential value, we conclude that in the absence of a right by the insured spouse to enforce that value, the renewal

right is not 'property' within the meaning of the community property laws." (*In re Marriage of Spengler, supra,* 5 Cal.App.4th 288, 299.) Accordingly, the trial court erred in finding the policy to be a community property asset.

If we followed *Spengler*, we would find that Mr. Havins's right to renew the term health insurance policy was not property divisible upon dissolution.

## 2. *Term Disability Insurance.*

Another useful analogy is to term disability insurance benefits. Our Supreme Court has recently considered term disability insurance in the case of *In re Marriage of Elfmont* (1995) 9 Cal.4th 1026 [39 Cal.Rptr.2d 590, 891 P.2d 136]. A majority of the court held that "[p]ostseparation disability benefits, even if intended to provide retirement income, may be treated as community property only to the extent they were 'purchased during marriage with community funds' [citation]." (*Id.,* at p. 1033.) Discussing renewal rights, the court distinguished renewal rights in disability insurance from renewal rights in term life insurance because the purposes of the two types of insurance are different. The majority said: "The purpose of term disability insurance, by contrast, is to replace lost earnings. If during the marriage an insured spouse becomes disabled, the benefits received are community property because they replace community earnings. [Citation.] If the benefits continue after the spouses have separated, they are the separate property of the insured spouse whose earnings they replace, unless during the marriage the premiums were paid out of community funds with the intent that the benefits provide retirement income. [Citation.] If, however, the insured spouse has not become disabled during the last policy term for which a premium was paid before the parties' separation, the community will have no interest in benefits produced by renewals of the policy for subsequent terms, because the renewal premium will not have been paid 'during the marriage with community funds' and with the intent of providing community retirement income [citation]." (*Id.,* at pp. 1034-1035.) Accordingly, "the right to renew the insured spouse's term disability insurance after separation does not give rise to any community property interest in the insured's disability benefits." (*Id.,* at p. 1035.)

In a concurring and dissenting opinion, Justice George agreed that the husband could retain the disability insurance benefits as his separate property because he paid the renewal premiums from his separate property after separation. Justice George argued, however, that the husband should be required to reimburse the community for the value, at the time of separation, of the contractual right to renew the disability policies because the renewal right was a valuable asset that had been obtained and retained during the marriage.

### 3. *Conclusions.*

■ Employer-subsidized retiree health insurance is unquestionably a fringe benefit derived from employment. Mr. Havins earned the right to have and renew such insurance by his long-term employment with the federal government. Renewal for the balance of his life is contingent only upon the continued payment of premiums. Postseparation premiums have been paid from his separate retirement annuity.

These health insurance renewal rights are analogous to renewal rights under term disability insurance policies and term life insurance policies. Applying the majority decision in *Elfmont*, i.e., that a postseparation right to renew a disability insurance policy does not give rise to a community interest in the insured's disability benefits, we find that Mr. Havins's continuing right to renew his health insurance coverage by continued payment of premiums from his separate property does not give rise to a continuing community interest in his health insurance benefits.

We also agree with *Logan*'s analysis of the nature of renewal rights in a term life insurance policy, and find it directly analogous to health insurance benefits: "The community having received everything it bargained for, there is no longer any community property interest in the policy and no community asset left to divide." (*Estate of Logan, supra,* 191 Cal.App.3d 319, 325.) Although Mr. Havins continues to receive subsidized health insurance coverage, he pays for a portion of that coverage with his separate property. Any community interest in his health insurance ended at the time of dissolution.

We disagree with the *Spengler* distinction between enforceable contract rights and mere expectancies. Mr. Havins, as a retiree, has an enforceable right to continue to participate in the health insurance plan so long as he continues to pay premiums. Unlike the employee in *Spengler*, the renewal right of Mr. Havins was earned during his employment and may not be eliminated by his employer. The renewal right is therefore property within the *Spengler* test. (*In re Marriage of Spengler, supra,* 5 Cal.App.4th 288, 298-299; cf. *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164] [nonvested pension rights are property, not mere expectancies].) Nevertheless, we find Mr. Havins's health insurance, including its current renewal rights, is the separate property of Mr. Havins because it has been purchased with postseparation earnings, and is a postseparation fringe benefit. (*Estate of Logan, supra,* 191 Cal.App.3d 319, 324-325.)

We therefore find that, although the right to continuation of subsidized health care coverage without evidence of good health is itself a property

right that has some value, the right is not subject to valuation and division at the time of dissolution when the employee or retiree continues to pay for the health insurance with his separate funds. In such a case, there is simply no community asset to divide.[4]

## DISPOSITION

The judgment is reversed. All parties are to bear their own costs on appeal.

Ramirez, P. J., and McKinster, J., concurred.

---

[4]The trial court thus erred in finding there was a divisible community property asset. It also erred in its award of damages. Having found such an asset, Mr. Havins's renewal right, the trial court should have valued it and divided it. Instead, it focused on the amounts paid by the former Mrs. Havins for health insurance coverage, and found it would not be inequitable to require Mr. Havins to "assume a portion of the cost of Petitioner's premiums for comparable coverage." Of course, the cost of her coverage has nothing to do with the value of his renewal right, and the trial court erred in assuming that it did. Although it found a valuable and divisible renewal right, it failed to value that right, relying instead on the amount of premiums previously paid by the former Mrs. Havins. The amount of premiums previously paid by the former Mrs. Havins is an amount totally unrelated to the alleged value of Mr. Havins's renewal right.