[No. B153207. Second Dist., Div. Four. July 25, 2002.]

In re the Marriage of HAROLD A. and MADELINE ELLIS.
HAROLD A. ELLIS, Appellant, v.
MADELINE ELLIS, Respondent.

**COUNSEL**

Lipton and Margolin and Hugh A. Lipton for Appellant.

Law Offices of Lawrence D. Levine and Lawrence D. Levine for Respondent.

**OPINION**

**VOGEL (C. S.), P. J.—**

### INTRODUCTION

In a 1991 final judgment on dissolution of the marriage of appellant Harold A. Ellis (Harold) and respondent Madeline Ellis (Madeline),[1] the trial court reserved jurisdiction of the issue whether there is a community property interest in a medical subsidy available to Harold upon his subsequent retirement. In January 2001, after Harold's retirement, Madeline requested the trial court to set a hearing on the reserved issue. Harold requested the court to bifurcate the issue whether there is a community property interest from the issue of evaluating its amount, in order to possibly avoid discovery and expert witness expenses as to valuation. The trial court did so, and the parties submitted briefs, declarations, and documentary evidence addressing Harold's contentions that the medical benefit was attributable solely to his postseparation earnings or was otherwise not divisible as community property. After a hearing, the trial court issued its order finding "a community interest in the health insurance subsidy benefits in [Harold's] health plan and jurisdiction to divide same." The court set a date in October 2001 for a hearing on value. Harold filed a notice of appeal from the order finding a

---

[1]Because the parties have long been divorced and Harold has remarried, he requests that we designate the parties by first names instead of "Husband" and "Wife." (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1 [274 Cal.Rptr. 911].)

community interest, and the trial court stayed further proceedings pending this appeal.

We conclude the order is not appealable, because it is interlocutory in nature, merely preliminary to an anticipated final order evaluating and dividing the asset. We reach the merits, however, by construing Harold's appeal as a petition to this court for an extraordinary writ. We grant the petition because *In re Marriage of Havins* (1996) 43 Cal.App.4th 414 [50 Cal.Rptr.2d 763] supports Harold's contention that Madeline has no interest in the subsidy of Harold's postdissolution medical insurance premiums.

<h2 style="text-align:center">APPEALABILITY</h2>

The order appealed from was made after the 1991 final judgment. Although Code of Civil Procedure section 904.1, subdivision (a)(2) makes appealable "an order made after a judgment made appealable by paragraph (1)," this does not literally mean that *any* order after a previous judgment is appealable. To be appealable, a postjudgment order must meet certain requirements. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651-652 [25 Cal.Rptr.2d 109, 863 P.2d 179].) Some postjudgment orders are not appealable because, "although following an earlier judgment, [they] are more accurately understood as being preliminary to a later judgment, at which time they will become ripe for appeal. [¶] . . . [¶] . . . [Such postjudgment orders lack] finality in that they [are] also preparatory to later proceedings." (*Id.* at pp. 652, 653.) This rule was applied in a marital dissolution context in *In re Marriage of Levine* (1994) 28 Cal.App.4th 585 [33 Cal.Rptr.2d 559]. After a judgment of dissolution, a dispute arose concerning compliance with a guarantee in the judgment that the husband would receive a certain amount from the sale of various assets. In a postjudgment order the trial court held it had authority to do certain acts to resolve that dispute. The husband appealed, but the Court of Appeal dismissed the appeal because, pursuant to *Lakin*, the order was not sufficiently final and was merely preliminary to the actual resolution of the dispute. (*In re Marriage of Levine, supra*, 28 Cal.App.4th at p. 589.)

Similarly here, the order determines that the trial court has authority to evaluate and divide the medical subsidy, but it is only preliminary to *actually* doing so. The order could be reviewed upon appeal from the subsequent final judgment on reserved issue that actually divides the asset. In other words, this purported appeal is an "interlocutory" appeal, which normally is not permitted.

There is a special procedure in family law cases allowing an interlocutory appeal on a bifurcated issue. Family Code section 2025 provides, "Notwithstanding any other provision of law, if the court has ordered an issue or

issues bifurcated for separate trial or hearing in advance of the disposition of the entire case, a court of appeal *may* order an issue or issues transferred to it for hearing and decision *when the court that heard the issue or issues certifies that the appeal is appropriate.* Certification by the court shall be in accordance with rules promulgated by the Judicial Council." (Italics added.) Rule 1269.5 of the California Rules of Court specifies the procedure. It contains strict procedures and deadlines, and requires both that the trial court, in its discretion, certify the interlocutory appeal as appropriate, and that the appellate court, in its discretion, accept the interlocutory appeal. (Cal. Rules of Court, rule 1269.5; *In re Marriage of Stevenson* (1993) 20 Cal.App.4th 250, 253 [24 Cal.Rptr.2d 411]; *In re Marriage of von der Nuell* (1994) 23 Cal.App.4th 730, 732, fn. 1 [28 Cal.Rptr.2d 447].) This procedure was not followed here. Accordingly, the appeal must be dismissed as from a nonappealable order. (*In re Marriage of Griffin* (1993) 15 Cal.App.4th 685, 689 [19 Cal.Rptr.2d 94].)[2]

■  Nevertheless, on a purported appeal from a nonappealable order, the appellate court has discretion to treat the appeal as a petition for an extraordinary writ within the appellate court's original jurisdiction. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 88, pp. 148-149.) This was done in *In re Marriage of Vryonis, supra,* 202 Cal.App.3d 712, 714, footnote 1, where, similarly, the purported appeal was from an interlocutory ruling.

We likewise construe the present appeal as a writ petition. Both parties agreed below it was prudent and economical to bifurcate this issue (similar to "liability") from the issue of valuation (similar to "damages"). If Harold is correct that as a matter of law the medical subsidy is not divisible, an expensive trial to determine its value would be unnecessary. The merits have been fully briefed. Madeline raised no objection in her respondent's brief concerning appealability of the order and thus impliedly requested us to rule on the merits. In response to our request for supplemental briefing on the appealability of the order, both parties request that we treat the appeal as a

---

[2]At the close of the trial court proceedings, the following interchange occurred between the court and Harold's counsel: "Mr. Lipton: . . . Is the court treating this as a bifurcated decision so that if we want to take an appeal from the court's ruling that it will be at the end of the trial, or is the court saying this is a final ruling on this issue and if you want to appeal, Mr. Lipton, now is the time to appeal? [¶] The Court: It's a final ruling on the determination that there is a community attribute to the subject benefits, and you are welcome to do whatever you need to do at this time. [¶] Mr. Lipton: I just wanted to be procedurally correct. [¶] The Court: That's fine, counsel. [¶] Mr. Lipton: Thank you, Your Honor." (See *In re Marriage of Vryonis* (1988) 202 Cal.App.3d 712, 714, fn. 1 [248 Cal.Rptr. 807] [despite the formal appearance of a purported "judgment on bifurcated issues," it was in fact an interlocutory ruling, not a "judgment" on a bifurcated issue]; *In re Marriage of Loya* (1987) 189 Cal.App.3d 1636, 1638 [235 Cal.Rptr. 198] [substance, not label, determines whether trial court's order was a "judgment" or merely an interlocutory ruling].)

writ in order to resolve the issue now. (*In re Marriage of Vryonis, supra*, 202 Cal.App.3d 712, 714, fn. 1.)

COMMUNITY PROPERTY

*Factual Background*

The 1991 dissolution judgment "reserve[d] jurisdiction over the City of Los Angeles Retired Health Plan medical subsidy to determine, upon [Harold's] retirement, whether the community has an interest in said medical subsidy." On a prior appeal from that judgment, Madeline contended that instead of reserving jurisdiction until Harold's retirement, the trial court should have made an award to her based on her actuary's attempt to calculate its then present value. This court, in *Ellis v. Ellis* (Apr. 11, 1994), B064936) (nonpub. opn.), rejected that argument. We described the factual background and the legal issue as follows: At the time of trial Harold was 56 years old and had worked for the City of Los Angeles for over 20 years. He was eligible to retire but planned to keep working and did not know when he would retire. If he was enrolled in a city-sponsored health plan when he retired, he would be eligible to receive a health insurance premium subsidy, for lifetime or unless the benefit was changed; but eligibility was subject to change by amendment of the ordinance that created it, and the amount was subject to change by the city's retirement board. We held that in light of these uncertainties whether the benefit would mature, the trial court did not err in reserving jurisdiction instead of making a present award. We said, "When the husband retires, the court, having reserved jurisdiction, will be able to determine the value, if any, of the medical-insurance premium subsidy, and the value of any community interest in it, and make appropriate orders." (*Ellis v. Ellis, supra*, B064936.) We cited *In re Marriage of Brown* (1976) 15 Cal.3d 838, 848 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].

In January 2001, after Harold's retirement, Madeline requested the trial court to set a hearing on the reserved issue. She offered her actuary's previously prepared estimate that as of the 1991 trial date, based on the number of years Harold had then worked during the marriage, the community had a 97.7 percent "interest" in the benefit. She argued that although the "percentage has been reduced [by Harold's] continued employment, . . . it is also believed that the monthly benefit has increased."

Harold requested the court to bifurcate the issue whether there was any legal basis for Madeline to claim any community interest in the health insurance premium subsidy. He submitted a declaration stating, "My right to

receive lifetime medical was contingent upon my completion of additional years with the City of Los Angeles and thus . . . I contend a post separation benefit to which [Madeline] has no entitlement." He added that for a short while he had paid premiums for health insurance, and that after he remarried and covered his new wife, he paid premiums because of a difference in cost for two-person coverage. In his memorandum of points and authorities he asserted *In re Marriage of Havins, supra*, 43 Cal.App.4th 414, decided after the prior judgment, supported his legal argument.

Madeline submitted points and authorities urging that *Havins* was wrongly decided. Madeline reiterated her argument that a substantial portion of Harold's entitlement to the subsidy on his retirement was earned by his prior employment during the marriage.

Madeline offered documents from the city regarding the current subsidy as of May 2001. The maximum medical subsidy for members under age 65, or over 65 with only part B of Medicare, was $702. The premiums for the city's PPO (preferred provider organization) plan were as follows: $697.77 for a retiree under 65, or over 65 with only part B of Medicare; $261.57 for a retiree over 65 with both parts A and B of Medicare; $1,527.41 for a retiree and dependent both under 65, or both over 65 with part B of Medicare; and $510.51 for a retiree and dependent both over 65 with parts A and B of Medicare. Premiums for Kaiser and PacifiCare/Secure Horizons HMO (health maintenance organization) plans were lower. Harold now lives in Washington and can only use the PPO plan. For retirees living outside the city's Kaiser or PacifiCare/Secure Horizons service areas, the benefit was available as a reimbursement subsidy for premiums paid to other plans.

After receiving the parties' memoranda, declarations, and exhibits, the trial court heard argument. At the outset the court stated its tentative decision, to which it apparently adhered after argument. The court framed the issue thus: "My inclination . . . is to treat this as being other than [a disability insurance benefit or a term life insurance benefit], but instead to treat it as part of the package of benefits that exist by virtue of the employment, both pre-separation and post-separation. The benefit is the result of years of service, some of which were community, some of which were post-separation, and the court is of the belief that in following the *Brown* rationale, the early years, or at least those during marriage, count as much as the very last years in coming up with the number of months or years or whatever type of accounting we use to come up with a formula; and that as such, it would be in part a community benefit."

### Discussion

The general rule under *Brown*, mentioned by the trial court, is that "[p]ension rights, whether or not vested, represent a property interest; to the

extent that such rights derive from employment during coverture, they comprise a community asset subject to division in a dissolution proceeding." (*In re Marriage of Brown, supra*, 15 Cal.3d 838, 842.) A retiree's *pension income* is therefore subject to division, most commonly based on a fraction involving the years worked by the employee spouse during the marriage compared to the total years worked. (*In re Marriage of Lehman* (1998) 18 Cal.4th 169 [74 Cal.Rptr.2d 825, 955 P.2d 451].) Employer-provided retirement "fringe benefits" *may* also be "property" having a community attribute that is divisible on a similar basis. (See *In re Marriage of Spengler* (1992) 5 Cal.App.4th 288, 297 [6 Cal.Rptr.2d 764].)

The present case does *not* involve Harold's pension income. It involves Harold's postretirement participation in the employer's health care plan, with a portion of the cost subsidized by the employer. Even assuming that Harold earned his right to this postretirement subsidy in part by his employment during the marriage, *In re Marriage of Havins, supra*, 43 Cal.App.4th 414, holds this benefit to Harold is not property divisible as community property.

In *Havins*, the husband was already retired and receiving pension benefits at the time of the divorce. The dissolution judgment provided that his pension be divided equally between the parties. The underlying dispute involved whether the payment of premiums for each party's health care coverage was to be taken off the top from the gross pension, or each party would pay the premium for his or her own coverage out of the portion distributed to them. (*In re Marriage of Havins, supra*, 43 Cal.App.4th 414, 416-417.) This made a practical difference because the husband's premiums were subsidized by the former employer, whereas the wife's premiums were for the full cost for nongroup, individual coverage. (*Id.* at p. 418, fn. 1.) When the trial court ruled that taking the premiums off the top would unfairly require the husband to pay a portion of the higher cost of the wife's coverage, the wife sought to avoid this result by arguing that the husband's "right to purchase subsidized health insurance" was a community asset in which she could share. (*Id.* at pp. 417-418.)

Deciding the issue as a question of first impression (*In re Marriage of Havins, supra*, 43 Cal.App.4th at p. 418), the appellate court held that *even though* "[e]mployer-subsidized retiree health insurance is unquestionably a fringe benefit derived from employment," and the husband had "earned the right to have and renew such insurance by his long-term employment," and this right was "itself a property right that has some value," *nevertheless* this property right may not be divided as community property. (*Id.* at pp. 423-424.) Lacking prior precedent directly on point, the court analogized

to various cases involving the postseparation purchase of renewable term life insurance and renewable term disability insurance. (*Id.* at pp. 418-422.) Those precedents offered the court several possible rationales for its holding: the right to subsidized health insurance is not convertible to cash; some fringe benefits of undisputed value to the employee or retiree are simply not divisible for the benefit of the spouse upon divorce (e.g., a right to a discount at an employer-owned cafeteria or store); and after divorce each renewal for a new term occurs outside the marriage and, to the extent additional premiums are required, the premiums come from the separate property of the employee or retiree. (*Ibid.*)

Madeline attempts vainly to distinguish *Havins*. She emphasizes that in *Havins* the retiree had as a matter of fact *paid* something, from his postseparation income, toward renewal of the health insurance each year, because the employer's subsidy did not cover the full cost of the insurance. (*In re Marriage of Havins, supra,* 43 Cal.App.4th at p. 423.) She contends that in the present case, the employer has, historically, offered a subsidy equal to the premium for the most expensive plan, so that Harold has not, as a matter of fact, actually paid any premiums from his postseparation income toward postseparation renewals of his health insurance coverage.[3]

This distinction is not determinative. Madeline conceded at oral argument that the premiums and the employer contributions to subsidize the premiums are redetermined each year, so there is nothing in the plan that guarantees Harold will either always receive a subsidy in a specific amount, or the subsidy will always equal the premium for available coverage. For the purpose of characterizing the subsidy as divisible community property or not, different cases should not have different results based on annual vagaries in premiums or the employer contributions toward premiums. We believe the *Havins* court intended to establish a general rule that this particular type of retirement fringe benefit is not divisible community property. It stated its holding as a rule regarding the postdissolution "availability" of employer-subsidized health insurance or the postdissolution "right" to purchase or "renew" it. (*In re Marriage of Havins, supra,* 43 Cal.App.4th at pp. 416, 417, 418.) In the long run a bright-line rule is more beneficial to couples dissolving their marriage and family law attorneys advising them, than complex technical "distinctions" asserted by inventive counsel.

Finally, Madeline also contends that for the purpose of the present case it was conclusively determined in the prior 1991 judgment that the potential

---

[3]Madeline contends that Harold's declaration asserting he recalled briefly paying some premiums is inadmissibly vague, and in any event would be rebutted by contrary evidence if a trial is permitted. For the purpose of this discussion we assume the truth of Madeline's assertion.

medical insurance subsidy had community attributes. This is incorrect. The wording of the 1991 judgment was that the court reserved jurisdiction to determine, upon Harold's retirement, "whether the community has an interest in said medical subsidy." On the prior appeal we determined only that the trial court appropriately postponed consideration of the issue in light of the uncertainty whether Harold would ever receive the subsidy. After the 1991 judgment and 1994 prior appeal, the *Havins* opinion in 1996 decided the precise issue of the divisibility of this type of benefit.

Because *Havins* sets forth the rule directly applicable to this case, the trial court erred by refusing to follow *Havins* and by following the more general *Brown* rationale instead.

## DISPOSITION

The appeal is dismissed. Let a peremptory writ of mandate issue, directing the trial court to vacate its order of July 12, 2001, and enter a new and different order finding that there is no community interest in Harold's health insurance subsidy benefits. Costs are awarded to Harold pursuant to rules 26(a)(1) and 56.4, California Rules of Court.

Hastings, J., and Curry, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 16, 2002. Kennard, J., was of the opinion that the petition should be granted.