Filed 6/24/25  Traci W. v. Michael S. CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| Traci W., | D083565 |
| Respondent, | |
| v. | |
| Michael S., | (Super. Ct. No. DN188889) |
| Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Victor M. Torres, Judge; treated in part as a petition for writ of mandate. Order affirmed; petition denied.

Michael S., in pro. per., for Appellant.

John T. Sylvester for Respondent.

Plaintiff Traci W. and defendant Michael S. have been embroiled in extensive family court litigation since shortly after the birth of their son C.

(Minor) in 2016. As of May 2024, the register of actions extended to almost 50 pages. This is the parties' fifth appeal.[1]

Michael appeals from orders (1) renewing Traci's domestic violence restraining order (DVRO) for an additional 15 years under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.) (renewal order); and (2) requiring him to have no contact with Minor "at this time," and to undergo a full psychological evaluation, after the trial court stated it had "serious concerns" about his "mental stability" (no-contact order).[2]

Michael, who is self-represented, claims the trial court abused its discretion and denied him due process of law when it issued the renewal and no-contact orders. In so doing, he relies on evidence outside the appellate record; asserts claims that are outside the scope of the two orders he appeals from (i.e., seeking disqualification of the trial judge due to "judicial malpractice" and for running a "kangaroo court"); and challenges this court to seek "the truth" in deciding this case based on facts favorable to him.

Michael misperceives our role as a court of review. Our jurisdiction " 'is limited in scope to the notice of appeal and the judgment or order appealed from.' " (*Soldate v. Fidelity National Financial, Inc.* (1998) 62 Cal.App.4th 1069, 1073.) We do not reevaluate the credibility of witnesses or reweigh the

---

[1]     Case Nos. D079500 (Michael's appeal from the 2021 judgment); D079984 (Traci's appeal from the order denying her request to permanently renew a domestic violence restraining order); D080174 (Michael's appeal from the order denying his own request for a restraining order against Traci); and D080542 (Traci's appeal from the order reducing Michael's child support obligation).

[2]     Michael separately appealed the two orders. Regarding the no-contact order, we construed his appeal to be taken from the findings and order after hearing dated December 7, 2023, and not from the court's interlocutory order of November 13, 2023, attached to his notice of appeal.

2

evidence and make new findings when the trial court's findings are supported by substantial evidence. An appeal is not a retrial of the facts of the case before a different tribunal.

Following established rules of appellate procedure, we conclude (1) Michael received the process he was due when, in his absence, the trial court renewed the DVRO for 15 years; and (2) substantial evidence supports the court's finding that suspending visitation, pending Michael undergoing a full psychological evaluation, was in Minor's best interest "at this time." Accordingly, we affirm both orders.[3]

## FACTUAL AND PROCEDURAL BACKGROUND[4]

### A. *Initial DVRO*

Traci and Michael never married and have one son together, Minor. In May 2018, Traci filed a petition for a DVRO that included Minor as a protected party. She alleged that beginning in September 2016, Michael had "behaved in extremely bizarre ways" toward her and her counsel; that his conduct was becoming more "abusive," "threatening," and "intimidating"; and

---

[3]    In affirming, we encourage the parties to work toward a final resolution of this highly contentious litigation in order to promote the "best interests" of Minor and further the strong public policy of this state of encouraging parents to share child-rearing responsibilities after separation. (See Fam. Code, § 3020, subd. (a) [a child's "health, safety, and welfare" are "the court's primary concern in determining the best interests of children"]; subd. (b) ["[t]he Legislature finds and declares that it is the public policy of this state to ensure that children have frequent and continuing contact with *both* parents after the parents have . . . ended their relationship, and to encourage parents to *share* the rights and responsibilities of child rearing in order to effect this policy"] (italics added).)

[4]    We view the record in the light most favorable to the renewal and no-contact orders. (See *Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.* (2018) 19 Cal.App.5th 258, 270.)

that as a result, she feared for her own and Minor's safety. In June 2018, the trial court granted Traci's petition, issuing a restraining order protecting Traci and Minor for a three-year term, and temporarily suspending all visitation between Michael and Minor.

In early June 2021, the trial court entered a judgment of parentage. It awarded Traci sole legal and physical custody of Minor, granted her permission to move with him to New York, and ordered a visitation plan for Michael to reconnect with Minor.

## B. *Traci's Appeal and Reissuance of the DVRO on Remand*

At about the same time as the parentage judgment, Traci petitioned for permanent renewal of the DVRO on the same terms as the June 2018 order. The trial court denied the petition. On appeal, we reversed and directed the trial court to grant Traci's petition, excluding Minor, and to determine in the first instance whether to renew the DVRO permanently or for a lesser term. (*T.W. v. M.S.* (Apr. 28, 2023, D079984) [nonpub. opn.].)

On remand, Traci sought a permanent DVRO against Michael. She declared under penalty of perjury that since June 2021, Michael met her attempts to keep communication amicable with "hostility, harassment, insults, threats of police involvement and irrational legal filings despite [him] being deemed a [v]exatious [l]itigant and his history of [d]omestic and [w]orkplace violence." She complained that Michael accused her of being "mentally deficient, a criminal, a fraud, a child trafficker, an abuser, and a parent alienator" in order to "harass" and "discredit" her.

Michael neither filed a written response to Traci's request for a permanent restraining order nor appeared at the unreported renewal hearing on July 27, 2023. In his absence, the trial court extended the DVRO for 15 years to July 1, 2038, excluding Minor as a protected party.

4

**C.** *Traci Seeks Emergency Relief to Suspend Michael's Visitation*

In August 2023, Traci filed an ex parte emergency request for order (emergency RFO) to modify Michael's visitation. She alleged that Michael took Minor and his half-sister L. (Michael's other child) on a bus trip through parts of the United States in July and repeatedly refused to provide her with their location. Traci further claimed that Minor seemed "very distressed and overwhelmed" when he returned from the trip, informing both Traci and his therapist that Michael had insisted on showering with him, naked, and washing his "private areas." Traci reported the incident to New York child protective services and law enforcement.

At an unreported hearing, the trial court suspended Michael's in-person visitation and continued the review hearings while waiting for the New York authorities to complete their investigation. In November 2023, the court determined the abuse allegations against Michael were unfounded. During that hearing, however, Michael become disruptive and, according to the court, "incoherent." As a result, it issued the no-contact order.

## DISCUSSION

We do not underestimate the challenges faced and frustrations endured by family law litigants like Michael attempting to represent themselves on appeal. But the rules regarding the presentation of an appeal must apply to all litigants equally. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 (*Nwosu*).) A fundamental principle of appellate review is that a decision of the trial court is presumed to be correct, and the burden is on the appellant to affirmatively demonstrate error. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Marriage of Arceneaux*).) This burden includes several components. Appellants must provide the reviewing court with a "summary of the significant facts limited to matters in the record" (Cal. Rules of Court,

rule 8.204(a)(2)(C)[5]); and "[s]upport any reference to a matter in the record by a citation to the volume and page number where the matters appears" (rule 8.204(a)(1)(C)). We disregard any facts in the briefs that are not part of the record.[6] (*Pulver v. Avco Fin. Servs.* (1986) 182 Cal.App.3d 622, 632 (*Pulver*).) The failure to follow these rules can have significant consequences.[7]

---

[5] All further rule references are to the California Rules of Court.

[6] Michael's briefs cite to multiple items in his motions to augment the record and requests for judicial notice that were deferred to the merits panel. We now rule as follows on the deferred items, refusing to consider those that are not a part of the record on appeal: (1) March 7, 2024 motion to augment: items 5 and 6 (denied; irrelevant); (2) April 9, 2024 renewed request for judicial notice (RJN): items 1, 2, 3, 4, 5, and 6 (denied; irrelevant/improper subject of judicial notice); (3) September 10, 2024 supplemental RJN: items 1, 4, 9 (denied; irrelevant/improper subject of judicial notice); item 2 (denied; rule 8.155(a)(1)(A) [motion to augment may include "[a]ny document filed or lodged in the case in superior court"]; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 (*Vons*) [absent extraordinary circumstances, " 'when reviewing the correctness of a trial court's judgment [or order], an appellate court will consider only matters which were part of the record at the time the judgment [or order] was entered' "]); (4) October 16, 2024 motion to augment, volumes 1, 2, 3, 4, 5, 6, 7, 9, 10, 12, 13, 14, and 15 (denied; irrelevant/improper subject of judicial notice; moot [subject of earlier augmentation motions/RJNs]; volumes 8 and 11 (denied; rule 8.155(a)(1)(A); *Vons,* at p. 444, fn. 3).

[7] Michael's opening brief does not comply with many of these rules. His factual summary is one-sided and contains improper legal argument. (See *Nwosu, supra*, 122 Cal.App.4th at p. 1246; *Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.) Michael also relies on facts that he fails to support with appropriate citations to the record. (See rule 8.204(a)(1)(C); accord, *LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1070; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)

## A. *The Trial Court Properly Renewed the DVRO*

Michael contends the trial court deprived him of due process of law by holding the renewal hearing in his absence. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citations.]" (*Mathews v. Eldridge* (1976) 424 U.S. 319, 333 (*Mathews*).) "Due process requires 'notice, an opportunity to respond, and a hearing.'" (*Shenefield v. Shenefield* (2022) 75 Cal.App.5th 619, 632 (*Shenefield*).)

The key here is that Michael was given notice of the hearing and a fair *opportunity* to be heard on the renewal issue. Indeed, on June 26, 2023, the clerk of the trial court attested to placing the notice of renewal hearing in an envelope with postage fully prepaid, and depositing that envelope in the United States Postal Service at Vista, California, informing Michael of the hearing set for July 27, 2023, at 1:45 p.m. in department N-18. A document "correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail." (Evid. Code, § 641.)

Michael submitted no evidence to rebut this presumption. In addition, because the court clerk deposited the hearing notice in an envelope with postage fully paid at the United States Postal Service, service was "complete at the time of the deposit." (Code Civ. Proc., § 1013, subd. (a).) Michael therefore received proper notice of the July 27 hearing. (See *Mathews, supra*, 424 U.S. at p. 333; *Shenefield, supra*, 75 Cal.App.5th at p. 632.)

Moreover, Michael does not contend the notice of hearing listed an incorrect mailing address for him, or that he never received the notice at this address. Instead, he argues he had no reason to know the trial court would hold the renewal hearing when he was "outside of California" for months at a time. But Michael knew he was appearing as a self-represented litigant in

7

this matter. If he was going to be away from the address at which he received legal notices for an extended period, it was his responsibility to monitor documents mailed to that location. (See *Nwosu, supra*, 122 Cal.App.4th at p. 1247.) In short, Michael received the process he was due.

We also reject Michael's argument that the trial court abused its discretion when it renewed the DVRO for 15 years. He has provided no record on which to base his argument. The July 27 hearing was unreported, and there is no settled statement in lieu of a trial transcript for this hearing.

As we have already noted, the judgment or order of the trial court is presumed to be correct (*Marriage of Arceneaux, supra*, 51 Cal.3d at p. 1133), and the party challenging a judgment or order has the burden to affirmatively show error (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574). "A proper record includes a reporter's transcript or a settled statement of any hearing leading to the order being challenged on appeal." (*Ibid.*) "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment [or order] must be *conclusively presumed correct* as to *all evidentiary matters. . . .* The effect of this rule is that an appellant who attacks a judgment [or order] but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) We must therefore presume the renewal order was correct as to all evidentiary matters (see *ibid.*), and Michael has failed to show otherwise.

In any event, in D079984, *supra*, we *directed* the trial court to renew the DVRO in favor of Traci, but left the term of renewal to its discretion. A trial court is authorized to permanently renew a DVRO "without a showing of further abuse since the issuance of the original order." (Fam. Code, § 6345,

8

subd. (a); *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 115 [applying the abuse of discretion standard in reviewing a DVRO renewal order].)

Here, Traci's declaration in support of a permanent restraining order provides ample support for the 15-year extension, as she proffered evidence of Michael's refusal to follow court orders, his failure to amicably coparent Minor, and his ongoing hostility and insults against Traci, all of which disturbed her peace.  (Fam. Code, § 6320, subd. (a) ["abuse" under the DVPA includes behavior such as "disturbing the peace of the other party"]; *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1424 [on review of a DVRO, we ask " ' " 'whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted,' supporting the trial court's finding" ' "].)  For this separate reason, we reject Michael's claim the trial court erred when it entered the renewal order.

## B. *The Trial Court Did Not Abuse Its Discretion in Entering the No-Contact Order*

Michael next contends the trial court abused its discretion and denied him due process of law when it issued the no-contact order.  Traci disagrees.  She first argues that the no-contact order is "preliminary" to future proceedings and therefore not appealable.  On the merits, she contends Michael has failed to show any abuse of discretion by the court.

### 1. *Appealability*

Because it implicates our jurisdiction to decide the case, we must resolve any doubts regarding appealability before turning to the merits of the appeal.  (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.)  "A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment."  (*Griset v. Fair Political Practices Com.*

9

(2001) 25 Cal.4th 688, 696.) Whether a trial court's order is appealable is determined by statute. (*Ibid.*)

The no-contact order provides in relevant part: "1. The Court has serious concerns regarding Father's mental stability. [¶] 2. The Court finds that contact between Father and the Child is not in the Child's best interest at this time. [¶] 3. The Court orders Father to submit to a full psychological evaluation prior to any further contact with the Child[.] [¶] 4. The Court orders that Mother have sole legal and physical custody of the Child. [¶] 5. Father shall have no contact with the Child, in person, virtual, or telephonic."

In arguing that the no-contact order is appealable, Michael cites to Code of Civil Procedure section 904.1, which identifies various appealable orders. He relies primarily on subdivisions (a)(2) ["order made after a judgment made appealable by paragraph (1)"] and (a)(6) ["order granting or dissolving an injunction, or refusing to grant or dissolve an injunction"].[8]

Although Code of Civil Procedure section 904.1, subdivision (a)(2) permits the immediate appeal of an order made after an appealable judgment, it "does not literally mean that *any* order after a previous judgment is appealable." (*In re Marriage of Ellis* (2002) 101 Cal.App.4th 400, 403.) In particular, "[s]ome postjudgment orders are not appealable because, 'although following an earlier judgment, [they] are more accurately understood as being preliminary to a later judgment [or order], at which time they will become ripe for appeal. [¶] . . . [¶] . . . [Such postjudgment orders lack] finality in that they [are] also preparatory to later proceedings.' " (*Ibid.*,

---

8    Michael also cites Family Code section 3554, but that provision applies only to matters of support.

10

quoting *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651–653.)

Whether the no-contact order is appealable on this basis is unclear. On one hand, the order by its terms appears to be preliminary to further proceedings, as it states "that contact between Father and the Child is not in the Child's best interest *at this time*" and requires "Father to submit to a full psychological evaluation prior to any *further contact* with the Child." (Italics added.)[9] On the other, the order precludes all contact between Michael and Minor and sets no time limit on when visitation in any form may resume.

Whether the no-contact order is appealable as an injunction is similarly uncertain for similar reasons. It seems injunctive in nature because it prohibits Michael from doing an act—contacting Minor in any form. (See Code Civ. Proc., § 525 ["An injunction is a writ or order requiring a person to refrain from a particular act."].) If temporary, however, such orders have historically been viewed as nonappealable and subject to review only by means of an extraordinary writ. (See *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 565 [the "very nature" of temporary custody orders "compels the swiftest possible review of any challenge"; "[t]he writ process, not the appeal process, is the way to get that review"].)

In these circumstances, however, we need not definitively determine whether the no-contact order is appealable. If it is not, we elect to exercise

---

9    In his September 10, 2024 supplemental RJN, Michael attached a one-page letter from a licensed clinical social worker stating he had been in counseling since March 2024, ostensibly in an effort to show he had taken steps to comply with the psychological evaluation requirement in the no-contact order. We declined to take judicial notice of this document (see footnote 6) because the letter was written after issuance of the no-contact order (see *Vons, supra*, 14 Cal.4th at p. 444, fn. 3) and is not a proper subject for judicial notice (see Evid. Code, § 452).

our discretion to treat Michael's purported appeal as a petition for writ of mandate and we can address the merits of his arguments on that basis. (See generally *SCC Acquisitions, Inc. v. Superior Court* (2015) 243 Cal.App.4th 741, 750.)

    2. *Exercise of Discretion*

        a. *Additional factual background*

In support of her emergency RFO, Traci alleged reports from Minor regarding inappropriate conduct and statements by Michael during their July 2023 trip. Also during the trip, Michael made Minor and L. "wrestle and fight" and disparaged Traci, telling Minor he "hate[d]" his mother.

At an unreported ex parte hearing in August, the trial court suspended in-person visits between Michael and Minor and set a mandatory family court services (FCS) child custody counseling session for September. Michael, however, did not participate in the September FCS counseling session. He also did not file any response to Traci's emergency RFO. The court subsequently continued the September hearing to allow New York child protective services and a detective with the special victims unit to complete their respective investigations.

By November, the trial court had still not received an update from the New York authorities investigating Michael. At the reported hearing on November 13, Traci informed the court the detective was standing by telephonically and was willing to update the court and the parties regarding the status of her investigation. The detective then told the court she had interviewed Minor, who disclosed being "uncomfortable" with Michael showering and "washing" him but reported no sexual or physical abuse. The detective said child protective services in New York had refused to take the case and she was in process of closing her file. The court then asked Michael

if he had any questions for the detective. Michael responded he wanted her subpoenaed for an evidentiary hearing and claimed her statements, although favorable to him, were inadmissible because she had not been sworn as a witness.

After excusing the detective, the trial court ruled there were "no true findings" against Michael, adding: "I have jurisdiction to order that [Michael] not shower with this child and not manipulate his private parts during those bathing periods." Michael took issue with the court's statement, twice responding, "How dare you." Traci argued that even without the abuse allegations, the court should modify visitation because Michael was incapable of coparenting Minor. She requested that Michael submit to therapy and other court-ordered services.

Michael responded by accusing the trial judge of being "stupid and ignorant" for believing the abuse allegations. According to Michael, at an earlier (unreported) hearing Traci and her counsel had accused Michael of "st[icking] a bar of soap up [Minor's] butt." Michael then commented it was Traci's counsel who "had many large and small bars of soap up his butt." The court interrupted Michael and warned him about the need to maintain civility in the courtroom.

Michael next requested sanctions and attorney fees from Traci and her counsel. He called the trial judge by his first name (as he had done at the October reported hearing), told the court it had made erroneous rulings for the past three years and complained the judge lacked "integrity" and credibility. The court again warned Michael about his courtroom behavior. Michael responded by speaking in Spanish. The court found Michael "incoherent," removed him from the hearing, and ordered he undergo a "full psychological evaluation" before any further visits—including virtual and

13

telephonic—with Minor.  In making his ruling, the judge noted he had been prepared to merely order Michael to refrain from taking showers with Minor and to disclose his location to Traci every three days during extended visits with Minor.

> b. *There was no abuse of discretion*

"The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test.  [Citation.]  The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.)  "Although precise definition is difficult, it is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered." (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598.)

Under the Evidence and Family Codes, a trial court has the authority to order a parent to undergo a psychological evaluation before deciding issues of custody and visitation.  (See Evid. Code, § 730 ["When it appears to the court . . . that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required."]; Fam. Code, § 3111, subd. (a) ["In a contested proceeding involving child custody or visitation rights, the court may appoint a child custody evaluator to conduct a child custody evaluation in cases where the court determines it is in the best interest of the child."].)

Keeping in mind the applicable standard of review, we conclude substantial evidence supports the trial court's determination that contact between Michael and Minor was not in the child's best interest "at this time" due to its concern about Michael's "mental stability." Michael ignored the court's repeated warnings about the need for civility during the November 13 hearing. He continued making offensive remarks both to the trial judge and to Traci and her counsel.

Michael was upset at the hearing after Traci accused him of sexually abusing Minor and after a months-long investigation revealed the allegations to be unfounded. Although the trial court found that the detective's report was favorable to him, Michael was unable to control himself during the hearing. His behavior supported Traci's request that he undergo court-ordered services, including therapy, and the court's decision to impose the no-contact order based on Minor's best interest.

Moreover, Michael's inappropriate behavior at the November hearing does not appear to be an isolated incident. The minute order from the October hearing states Michael also was removed from that proceeding for "disruptive" behavior.

Traci's declarations in support of the renewal order and emergency RFO, as well as the evidence in support of the original DVRO, provide additional evidence of concerning behavior by Michael and its potential effect on Minor. Traci stated that she was unable to coparent with Michael due to his "wild mood swings" and "slew of abusive and controlling messages." Michael also did not allay the trial court's concern about his mental stability when he refused to participate in the court-ordered FCS counseling session in September.

In sum, we conclude substantial evidence supports the trial court's finding it was in Minor's best interest to suspend all visitation with Michael "at this time," and the court properly exercised its discretion in ordering Michael to undergo a psychological evaluation before restarting visitation. (See *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581 [substantial evidence requires "we accept all evidence supporting the trial court's order," "we completely disregard contrary evidence," and "we draw all reasonable inferences to affirm the trial court"]; accord, *Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 499.)

Michael claims the trial court denied him due process of law when it spoke to the detective in New York without first swearing her in and when it removed him from the November 13 hearing. We are not persuaded by either contention.

The record shows the trial court had asked the New York authorities for a copy of their report when they completed their investigation, that no report had been forthcoming, and that the court already had continued the review hearing twice. Although somewhat unconventional, it was these circumstances at the November hearing that led the court to call the detective, who was on standby, to obtain a telephonic update on the investigation. Far from being a due process violation, the record shows the detective provided information *favorable* to Michael, which led directly to the court's no-abuse finding.

Michael also cannot complain about his removal from the November hearing. The trial court repeatedly warned him about the need for civility, and substantial evidence supports the finding that his behavior disrupted the proceedings. (See Code Civ. Proc., § 128, subd. (a) ["Every court shall have the power to do all of the following: [¶] . . . [¶] (3) To provide for the orderly

16

conduct of proceedings before it, or its officers."]; *People v. Sully* (1991) 53 Cal.3d 1195, 1239–1240 ["defendant expressly waived his constitutional right to remain in the courtroom by his own actions, taken with full knowledge and appreciation of the consequences"]; *People v. Hayes* (1991) 229 Cal.App.3d 1226, 1233–1234 [trial court has power to exclude a disruptive party from court proceedings after warning that behavior would cause removal].)  We find no abuse of discretion or constitutional violation due to his removal.

## DISPOSITION

The renewal and no-contact orders are affirmed.  To the extent the no-contact order is not appealable, we treat Michael's purported appeal as a petition for writ of mandate and deny it.  Traci shall recover her costs.[10]

DATO, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.

_____

[10]    Because we decide the appeal in favor of Traci on the merits, we reject her suggestion that we should dismiss Michael's appeal as objectively and subjectively frivolous.