Bobbie Ann **WYZARD**, Appellant–Respondent,

v.

Joe Pat **WYZARD**, Appellee–Petitioner.

No. 22A04–0109–CV–401.

Court of Appeals of Indiana.

July 18, 2002.

Sally A. Thomas, Lorch & Naville, LLC, New Albany, IN, Attorney for Appellant.

Derrick H. Wilson, Mattox, Mattox & Wilson, New Albany, IN, Attorney for Appellee.

**OPINION**

DARDEN, Judge.

### STATEMENT OF THE CASE

Bobbie Ann Wyzard ("Wife") appeals the trial court's order distributing the as-

sets from her marriage to Joe Pat Wyzard ("Husband").

We reverse and remand.

### ISSUE

Whether the trial court erred in its valuation of the marital estate.

### FACTS

Wife and Husband married on June 26, 1965. They had one child, a daughter, born in 1971. On March 23, 1999, Husband filed for dissolution. Since April 1, 1970, Husband had worked as a firefighter for the City of New Albany. During that entire time, Husband also held a second part-time job. Throughout the long marriage, Wife also worked outside the home. The parties' joint income derived approximately 2/3 from Husband and 1/3 from Wife.

Wife never had any opportunity to participate in a 401K or company retirement plan until 1995. Her 401(K) plan, funded since that time, was worth $11,443.97 at the time of the dissolution.

Husband was covered by the Police Officers' and Firefighters' Pension and Disability Fund ("the Fund"). Effective July 1, 1999,[1] the Fund provides retirement benefits to a firefighter who retires after the age of fifty-two with twenty years of service. Maximum retirement benefits are earned by working as a firefighter for thirty-two years. At the time of the final hearing, Husband was nearly fifty-four and had nearly twenty-nine years of service as a firefighter.

At the final hearing, Husband's expert testified that to determine the "present value" of a pension, one calculated "that amount of money which if placed on depos-

---

1. The dissolution order is dated August 27, 2001; the parties submitted evidence on the valuation of assets as of July 1, 1999.

it would be sufficient to pay out benefits over the lifetime of the recipient of those benefits" under the terms of the pension plan. (Tr. 26). Husband's expert further testified that based upon mortality tables and investment return rates, he valued Husband's current "vested pension benefits" from the Fund at $340,897.49. *Id.* That value did not include any possible future cost-of-living increases in benefits. Wife's expert, who did include possible future cost-of-living increases in benefits, valued the pension at $518,174. Testimony at the hearing established that should Husband die before retiring, his estate would only receive the $32,409.53 he contributed to the Fund; however, if Husband was married, his wife would receive 60% of his benefits after his death; Wife, as an ex-spouse, would receive nothing from the Fund upon Husband's retirement or upon his death before retirement.

The trial court found the value of Husband's pension to be $32,409.53, "as of July 1, 1999," based on the following:

(a) [ ] Husband was eligible to retire as of the date of separation because he had completed 20 years of active service.

(b) [ ] Husband was not eligible to receive retirement benefits as he had not yet reached 55 years of age as of the date of separation.

(c) [ ] Husband's contributions to his retirement fund totaled $32,409.53 as of the date of separation. He is fully vested in this amount.

(d) [ ] Husband is on active duty and is not retired. [ ] Husband is not required to retire. If he dies prior to retirement, his survivors, or his estate would only receive his contributions, plus accumulated interest;

(1) If he has no survivors eligible for benefits under the retirement fund, his contributions, plus accumulated interest will be refunded to his estate.

(2) If he has survivors eligible for survivor benefits and the survivor benefits paid do not exceed his total contributions plus accumulated interest, the difference would be paid to his estate.

(e) [ ] Husband's benefits are exempt from attachment, garnishment, judicial process such as a Qualified Domestic Relations Order and he may not transfer, assign or sell his benefits.

(f) There is no pre-retirement survivor benefit annuity in the event that [ ] Husband would die prior to retirement.

(g) [ ] Husband will not be eligible to receive Social Security retirement benefits upon retirement except through his part-time job.

(h) [ ] Wife will be eligible to receive Social Security retirement benefits upon retirement.

(App.13–14).

The trial court determined that the other marital assets totaled $165,172.50, resulting in a total marital estate of $192,582.03. The trial court then concluded that an equal division of the marital estate would not be just and reasonable and awarded 63% of the assets to Wife and 37% to Husband.

## DECISION

Here, the trial court entered findings of fact and conclusions of law, which triggers the following standard of review:

[W]e ... first determine whether the evidence supports the findings and second, whether the findings support the judgment. The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable infer-

ences from the evidence to support them. To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility.

*Breeden v. Breeden,* 678 N.E.2d 423, 425 (Ind.Ct.App.1997) (citations omitted). When the trial court engages in valuing assets in the course of acting on a dissolution action, it "has broad discretion" and

> its valuation will only be disturbed for an abuse of that discretion. So long as there is sufficient evidence and reasonable inferences to support the valuation, an abuse of discretion does not occur. We will not weigh the evidence and will consider the evidence in the light most favorable to the judgment.

*Id.* (quoting *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996)).

Wife argues that the trial court abused its discretion when it found that Husband's pension as of July 1, 1999 had a value of only $32,409.53. We agree.

■ More than a decade ago, our supreme court held that when the husband had worked during the entire span of a long-term marriage so as to be entitled to pension benefits under a pension plan at the time of dissolution, and such benefits would not be forfeited should the husband's employment subsequently termi-

nate, then those benefits were marital assets acquired by the joint efforts of the parties and necessarily became part of the marital estate. *In re Marriage of Adams,* 535 N.E.2d 124 (Ind.1989).[2] Thus, a pension that "accrues .... during the marriage ... is subject to distribution as part of the marital estate." *Leisure v. Leisure,* 605 N.E.2d 755, 759 (Ind.1993). Further, when determining the marital estate, "property" of the parties is statutorily defined to include "the right to receive pension or retirement benefits that are not forfeited upon termination of employment." IND.CODE § 31–9–2–98(b)(2). When the trial court divides property in a dissolution proceeding, it "shall divide" all property acquired by the joint efforts of the parties. IND.CODE § 31–15–7–4(a). This "'one pot' theory specifically prohibits the exclusion of any asset from the scope of the trial court's power to divide and award." *Coffey v. Coffey,* 649 N.E.2d 1074, 1076 (Ind.Ct.App.1995).[3]

■ It is undisputed that (1) at the time of the dissolution order, Husband was entitled to vested pension benefits from the Fund,[4] and (2) the right to receive pension benefits was not contingent upon Husband's continued future employment. *See Hann v. Hann,* 655 N.E.2d 566, 570 (Ind. Ct.App.1995), *trans. denied,* ("in order for a future pension benefit to be considered marital property in Indiana, the right to the pension must not be contingent upon

---

**2.** *Adams* also held that the fact that the order was improperly designated as a QDRO did "not impair the validity or enforceability of the order" that the wife receive a portion of the husband's benefits under a state police pension plan. 535 N.E.2d at 126, n. 2.

**3.** In *Coffey,* we held that the trial court's failure to include the husband's pension in the "marital pot," even though such benefits would cease upon the husband's death, was error. 649 N.E.2d at 1077.

**4.** The trial court's found that Husband "was not eligible to receive retirement benefits as he had not yet reached 55 years of age as of the date of separation;" however, because the trial court valued the pension plan as of July 1, 1999, and Husband was so eligible on July 1, 1999, this finding is rendered either irrelevant to the pension plan valuation or clearly erroneous as a consideration thereon.

future employment."). It is also undisputed that the evidence before the trial court as to the value of Husband's pension plan, based upon the definition of how such a value is determined as explained by Husband's and Wife's experts, ranged between $340,897.49 and $518,174. Therefore, given the absence of any evidence to support the valuation given Husband's pension plan by the trial court, we find that the trial court abused its discretion when it did not value Husband's pension plan within the range of the evidence presented.

As to Husband's arguments that (1) if he "died prior to retirement the only funds that his estate would receive would be his contributions plus accumulated interest," and (2) he was "not eligible to receive Social Security benefits upon retirement except through a part-time job, but ... [Wife] would be eligible to receive Social Security retirement benefits," Husband's Br. at 7, such may be proper considerations for the trial court in determining a just and reasonable division of the marital estate,[5] but are *not* relevant to a determination of the value of Husband's vested and non-forfeitable pension plan.

Accordingly, we reverse and remand with instructions to the trial court to value Husband's pension as an asset of the marriage within the range of the evidence presented.

SULLIVAN, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, J. dissenting.

I respectfully dissent and part ways with the majority's decision to reverse this case because the trial court valued Joe's pension at $32,409.53. Although the trial

court did not value Joe's pension plan within the range of the parties' expert testimony, the record shows that the trial court considered the amount of non-forfeitable funds and essentially awarded Bobbie a share of those benefits even though Joe would not be entitled to them in a lump sum at present, and would not be automatically entitled to those funds at the time of retirement. Thus, I cannot agree that there was an "absence of any evidence to support the valuation." Slip op. at 757.

In considering the final distribution of the property, the trial court also considered Joe's intention to continue working for at least five years. Appellee's App. p. 1. Also, as the majority acknowledges, the trial court properly determined that the benefits under the Fund were exempt from attachment, garnishment and judicial process. Joe could not transfer, assign or sell those benefits, and there was no pre-retirement survivor benefit annuity in the event that Joe died before retirement. The evidence also showed that while Joe was entitled to receive social security benefits from his part-time job at the print shop, he was ineligible to receive such benefits from the fire department upon retirement.

Inasmuch as Indiana has not squarely addressed the issue presented here regarding entitlement to social security benefits, a number of jurisdictions have recognized that, under certain circumstances, a trial court may consider reducing the present value of a pension by the amount that a person would have received under Social Security benefits as if the party had participated and contributed to that program.

For instance, in *White v. White*, 284 N.J.Super. 300, 664 A.2d 1297, 1298 (1995),

---

5. When the pension plan was valued at $32,409.53 by the trial court, Wife's distribution of the marital assets was 63%; if valued at either end of the range testified to by the experts, that share would be either 18% or 24% of the marital estate.

the Superior Court of New Jersey considered whether a federal employee who did not contribute to social security insurance was entitled to an offset against the value of his pension for a spouse's social security benefits. *Id.* at 1298. It was shown that the wife had no pension and the only retirement benefit to which she was entitled was social security. *Id.* In permitting the offset of the pension's value by the amount of social security benefits, the court noted:

> Defendant's non-participation in Social Security enabled the parties to enjoy a greater disposable income during the marriage.... When the Plaintiff retires, however, she will have the additional advantage of Social Security. Since Plaintiff contributed to Social Security during the marriage, Defendant is entitled to share in the coverture portion of her Social Security benefit.

*Id.* Along these same lines, in *Walker v. Walker*, 112 Ohio App.3d 90, 677 N.E.2d 1252 (1996), the husband was a long-time employee of the United States Postal Service and participated in its pension plan. The plan effectively took the place of both a private pension plan and Social Security. Neither the husband nor the postal service contributed to the social security system. At trial, it was established that if the husband had contributed to Social Security during the marriage, the present value of the benefits would have amounted to over $86,000. *Id.* The referee at the hearing deducted that present value from the marital portion of the husband's pension plan. *Id.* On appeal, the court rejected the wife's argument that it was improper to consider the husband's hypothetical social security credits as marital property. *Id.* In affirming the lower court's judgment, the *Walker* court observed:

> Public employees who do not participate in the Social Security system may be penalized because the portions of their

pension equivalent to Social Security contributions are marital property subject to division, while their spouse's contributions to Social Security cannot be considered marital property under federal statute.

*Id.* at 1253. The court went on to note that:

> [W]hile Social Security benefits are not true marital asserts and are not "subject to direct division," they are "subject to evaluation and consideration in making an equitable distribution of both parties' marital assets."

*Id.* Finally, it was concluded that:

> The court's division of defendant's retirement benefits did not constitute an abuse of discretion, as it exhibited a sound reasoning process by considering the equivalent of his Social Security benefits, by determining the present value of the marital portion of these benefits by expert testimony, and then by deducting this present value from the marital portion of defendant's pension plan.

*Id.* at 1254.

Considering such rationales as applied to the circumstances here, the parties agree that Joe would not receive social security benefits under the Fund. I acknowledge that benefits which cannot presently be withdrawn and are not vested cannot be considered for division in a dissolution action. *Axsom v. Axsom*, 565 N.E.2d 1097, 1100 (Ind.Ct.App.1991). However, this court has determined that certain types of property where one may not have any present possessory interest may be considered relevant to the parties' earning abilities or economic circumstances. *See In re Marriage of Bartley*, 712 N.E.2d 537, 545 (Ind.Ct.App.1999). Thus, as recognized by our colleagues in Ohio, it is apparent to me that future payment of social security benefits should be subject to a trial court's evaluation

when considering the distribution of the marital assets in an equitable fashion.

In a similar vein, I am reluctant to impose high burdens on litigants in dissolution actions in circumstances such as these to require a specific articulation of values by experts with regard to certain marital assets. Such exactitude should not be required, inasmuch as it is the overall distribution of the assets that is relevant—not the valuation of a single asset or benefit.

I would note here that testimony was presented at the final hearing regarding the mortality rate of firefighters. Joe's expert, Lewis Reynolds, testified that he has read studies that indicate there is a higher propensity for coronary artery disease and other circumstances that are tied to a firefighter's vocation. It was agreed that Joe's estate might receive only $32,0000. Appellant's App. p. 57, 73. Moreover, it was established that Joe could not transfer his pension under the Fund to his heirs or a subsequent spouse as in the case of a typical pension.

Bobbie, however, could designate a beneficiary for her retirement benefits without fear that her heirs would receive no benefit of those funds. She also has social security benefits that provide monthly survivor benefits for a spouse in the event that she might remarry at a future date. Both parties recognized that the Fund was not subject to a Qualified Domestic Relations Order, Appellee's App. p. 7, and the only value that Joe would receive might be the value of his own contributions at the time of his death.

Given such evidence, it is apparent to me that the trial court determined, based upon the totality of the circumstances, that a 50–50 division of the property between the parties was not appropriate. Rather, Bobbie was awarded 63% of the marital property and was entitled to receive accrued social security benefits. On the other hand, Joe was awarded 37% of the property and was eligible to receive his pension benefits. Therefore, I would hold that the trial court's decision not to include the valuation of Joe's pension, other than the amount of contributions that he paid into the Fund, does not amount to an abuse of discretion. The trial court's findings, as they relate to the pension, demonstrate that the only portion of the pension that Joe was entitled to regardless of his death, was properly considered. Thus, it is my view that the trial court's award to Joe of his firefighter pension under the Fund, in light of his ineligibility for social security benefits for his service as a firefighter, was not erroneous. I would affirm the trial court's judgment.