OPINION OF THE COURT
Barbara Howe, J.
This is a postjudgment proceeding brought by defendant to vacate the November 24, 1998 default judgment granted herein. The parties to date have concentrated on the previous treatment of defendant’s health care benefits, which, in the default proceedings, this court deemed a marital asset and *242 valued at $69,272, and then took that asset into consideration in its equitable distribution allocations.
Defendant contends now that his health care benefits are not a marital asset subject to equitable distribution. An evidentiary hearing was held before a matrimonial referee to determine (a) whether those benefits are an asset, and (b) if so, whether they were a marital asset subject to equitable distribution. The parties have agreed that, if this court adhered to its original determinations in that regard, then a further hearing would be required to determine the proper valuation of those benefits.
The matrimonial referee issued findings and recommendations, in which I have concurred. I issue this memorandum and order now as my decision on these issues.
(I)
As I wrote in my July 30, 2001 memorandum and order setting the matter down for a hearing:
“This action was commenced in 1997. At that time, defendant’s pension had been in pay status for over three years, as had the health insurance benefits that are presently at issue. Plaintiff contends that the health insurance benefits are a component of defendant’s pension, and that defendant’s ‘right’ to receive that benefit upon retirement was earned during the marriage and is a marital asset. Defendant disagrees.
“Both parties acknowledge that there is no case law on point and that this is an issue of first impression. My own research has disclosed no New York case adjudicating this issue” (at 3-4).
(¡I)
(a)
In DeLuca v DeLuca (97 NY2d 139), our Court of Appeals had to determine whether the defendant husband’s Police Superior Officers Variable Supplements Fund retirement benefits were marital property subject to equitable distribution. Although the Administrative Code of the City of New York section(s) establishing those supplemental benefits had provided that the benefits were not to be construed as a pension fund, the Court of Appeals held that that provision was not determinative of how the benefits were to be treated:
*243 “If the benefit is a thing of value and was earned in whole or in part during the marriage, it may be considered marital property subject to equitable distribution. Domestic Relations Law § 236 (B) defines ‘marital property’ as ‘all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held.’ In identifying nothing less than ‘all property” acquired during the marriage as marital property, this section evinces an unmistakable intent to provide each spouse with a fair share of things of value that each helped to create and expects to enjoy at a future date (see, DeJesus v DeJesus, 90 NY2d 643). There is, in fact, a presumption of marital property ‘premised on the contemporary view of marriage as an economic partnership, crediting each party’s contributions, whether monetary or not, to the growth and value of the marriage’ (id., at 648). Thus, marital property consists of ‘a wide range of intangible interests which in other contexts might not be recognized as divisible property at all’ (id., at 647).” (At 143-144.)
After reviewing its prior holdings on what might constitute marital property, the DeLuca Court focused its analysis on whether the benefits at issue were “intended as compensation for past services rendered” (at 145), and then held as follows:
“The wife here is not claiming a share of a new benefit conferred after the marriage. Rather, the benefits at issue here are compensation for the husband’s past employment services while the couple was still married. To the extent those past services occurred during the marriage, the non-titled spouse should receive an equitable share of this deferred compensation-type fund.” (At 146 [emphasis added].)
DeLuca is entirely consistent with earlier cases from the Court of Appeals. In Dolan v Dolan (78 NY2d 463, 466), for example, the Court noted:
“The New York Legislature has determined that marital property shall include ‘all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action’ *244 (Domestic Relations Law § 236 [B] [1] [c]). This Court has previously determined that pension benefits or vested rights to those benefits, except to the extent that they are earned or acquired before marriage or after commencement of a matrimonial action, constitute marital property (see, Majauskas v Majauskas, 61 NY2d 481, 490). That determination was consistent with the intent of the Legislature as embodied in Domestic Relations Law § 236 (B) (5) (d) (4) and accords with our understanding that a pension benefit is, in essence, a form of deferred compensation derived from employment and an asset of the marriage that both spouses expect to enjoy at a future date (Damiano v Damiano, 94 AD2d 132, 137). Allowing one spouse to share the pension benefit the other obtains through employment and considering such benefits to be marital property is also consistent with the concept of equitable distribution which rests largely on the view that marriage is, among other things, an economic partnership to which each party has made a contribution (id., at 138).” (Emphasis added; cf. also, Olivo v Olivo, 82 NY2d 202, 207.)
(b)
(i)
The parties were married in June 1957 and this action was commenced in August 1997. Defendant, a civil engineer who was born in 1937, was employed by the New York State Department of Transportation from September 1959 until his retirement on September 3, 1993. Defendant was earning $53,000 annually when he retired.
Upon his retirement, defendant began to receive a pension from New York State on account of his prior employment. In addition to the monthly cash payments, defendant also receives health care coverage through the pension plan. The state pays 90% of the costs of that health care coverage, and defendant must pay the remaining 10%. However, because defendant had accumulated sick time when he retired, he opted to use the maximum allowable accumulated sick time — approximately 1,200 hours — to defray his 10% share of the coverage costs. Defendant was told by state pension plan personnel that his sick time, upon conversion (at roughly $27.50 per hour), would pay for his 10% benefit share for 260 months, or for his anticipated, actuarially-calculated, life expectancy.
*245 From the date of defendant’s retirement in September 1993, until the date the default judgment of divorce was granted by this court on November 24, 1998, plaintiff, who, like defendant, was also born in 1937, shared fully in the health care benefits component of defendant’s pension plan.
(ii)
At the hearing before the matrimonial referee, each party presented expert testimony on the issue of whether the health care benefits — that is, more specifically, the health insurance coverage component of defendant’s pension benefits — are a marital asset subject to equitable distribution.
Defendant’s expert was an attorney whose sole area of practice is employee benefits and qualified pension plans, with a specific focus in the past few years of divorce matters. That expert testified, however, that, although she has dealt with the New York State retirement system, she has not been conversant with any plan’s health care benefits component prior to this case.
Plaintiffs expert, Dr. Frederick Floss, has a Ph.D. in economics and is a professor of economics and finance at the State University of New York College at Buffalo, and is a forensic economist. He has written many articles on how to value an employee’s fringe benefits and deferred compensation, and he has evaluated loss of employee health care benefits in both personal injury cases and divorce actions. In addition, because he is an employee of the State of New York, he receives benefits similar to those enjoyed by defendant. Since 1998, Dr. Floss has been a member of the executive board of the United University Professions, in which capacity he has been fully involved with contract negotiations and fringe benefit issues.
Thus, while defendant’s expert is certainly qualified in her area, her lack of prior familiarity with an employee’s health care benefits significantly dilutes the weight of her testimony. On the other hand, the referee found the evidence given by plaintiffs expert entirely credible and fully persuasive on all pertinent points, and I agree with that determination.
(iii)
Dr. Floss testified that fringe benefits, such as health insurance, are a part of an employee’s total compensation package *246 and constitute a thing of value.* Dr. Floss stated that, to the extent of an employer’s contribution(s) to a retirement plan’s health care benefits, those benefits represent compensation for services rendered by the employee in the past and that negotiated compensation packages which include such a retirement component involve a “reduction” in “current” wages to obtain that benefit. In particular, Dr. Floss testified that the employer’s percentage contribution to such health care benefits is always subject to negotiation.
Dr. Floss stated that the right to receive retirement health care benefits accrues over time and is dependent upon an employee’s having vested in the retirement system. With respect to the retirement health care benefits themselves, the employee’s postretirement percentage costs to keep coverage in effect can be defrayed, in whole or in part, by the use of the employee’s accumulated sick time as of the date of retirement. Significantly here, sick time is accrued over the entire period of employment, and the cash value of that accrued sick time is calculated using the employee’s final average salary. So, for example, a person earning $50,000 annually would have a greater cash value attributable to his or her sick time than a person earning $30,000 annually, and this is obviously a function of the individual’s employment history.
(HI)
Based upon Dr. Floss’ testimony, and applying the principles of DeLuca v DeLuca and the other cases cited supra, I conclude that the health care benefits component of defendant’s retirement plan is a marital asset subject to equitable distribution. Those benefits represent compensation for past employment services rendered by defendant, and plaintiff “should receive an equitable share of this deferred compensation-type [asset]” (DeLuca v DeLuca, supra, at 146).
[Portions of opinion omitted for purposes of publication.]

 Defendant’s expert also testified that health care benefits were “something of value.”