**Anne M. BINGLEY, Appellant–Respondent,**

v.

**Charles B. BINGLEY, Appellee–Petitioner.**

**No. 02A03–0904–CV–187.**

Court of Appeals of Indiana.

Oct. 30, 2009.

---

Stephen P. Rothberg, Fort Wayne, IN, Attorney for Appellant.

Lindsey A. Grossnickle, Bloom Gates Sigler & Whiteleather, LLP, Columbia City, IN, Attorney for Appellee.

## OPINION

BROWN, Judge.

Anne Bingley appeals the trial court's order as to division of assets in the dissolution of her marriage to Charles Bingley. Anne raises a single issue, which we revise and restate as whether the trial court erred in concluding that Charles's employer-paid post-retirement health insurance premiums were not a marital asset subject to division. We affirm.

The relevant facts follow.[1] Charles was a seventy-five year old man and was retired from Navistar Corporation at the time of filing. Charles was a participant in a defined benefit pension, and in addition to a monthly stipend, Charles received "an

---

1. Pursuant to Ind. Appellate Rule 33, the parties filed an Agreed Statement of Record in lieu of submitting a transcript of the dissolution proceedings and exhibits.

addition/supplemental [sic] benefit as a Navistar retiree in the form of payment by Navistar of [his] health insurance premiums which said payments by Navistar shall continue for the balance of [his] life."[2] Appellant's Appendix at 17. The payments are "a non-elective benefit deriving to [Charles] as a Navistar retiree and [are] not subject to divestiture, division, or transfer." *Id.* Charles could not have elected to receive a larger monthly pension in lieu of the premium payments.

Charles filed for dissolution of his marriage from Anne on May 9, 2006. At the dissolution proceeding, it was disputed whether to include the payments for Charles's health insurance premiums in the pot of marital assets. Anne offered an exhibit to demonstrate that, pursuant to actuarial principles, the premium payments had a present value of $101,556.

On September 15, 2008 the trial court entered its Decree of Dissolution of Marriage. The trial court, citing *Metro. Life Ins. Co. v. Tallent,* 445 N.E.2d 990 (Ind. 1983), determined that the "benefit is not marital property." Appellant's Appendix at 25. Anne filed a motion to correct error, and a hearing was held on March 6, 2009. On March 26, 2009, the trial court entered an order on the motion which again declared that the health insurance premium payments by Navistar should not be counted as a marital asset.

 The sole issue is whether the trial court erred in concluding that Charles's employer-paid post-retirement health insurance premiums were not a marital asset subject to division. In this case, the trial court entered findings of fact and conclusions thereon. However, the record does not reflect a request for such findings by either party. Where the trial court enters specific findings of fact and conclusions sua sponte, we apply a two-tiered standard of review: first, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Fowler v. Perry,* 830 N.E.2d 97, 102 (Ind.Ct.App. 2005); *see also Helm v. Helm,* 873 N.E.2d 83, 87 (Ind.Ct.App.2007). "The trial court's findings and conclusions will be set aside only if they are clearly erroneous, i.e., when the record contains no facts or inferences supporting them." *Fowler,* 830 N.E.2d at 102. A judgment is clearly erroneous "if the findings do not support the conclusions of law or the conclusions of law do not support the judgment." *Bizik v. Bizik,* 753 N.E.2d 762, 766 (Ind.Ct.App. 2001), *trans. denied.* "A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence." *Mullin v. Mullin,* 634 N.E.2d 1340, 1341 (Ind.Ct.App. 1994); *see also Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998) (holding that we "may affirm the judgment on any legal theory supported by the findings"). "We do not defer to conclusions of law, however, and evaluate them de novo." *Freese v. Burns,* 771 N.E.2d 697, 700 (Ind.Ct.App. 2002). *trans. denied.*

 This case requires us to interpret Ind.Code § 31–9–2–98. "The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question." *Citizens Action Coal. of Ind., Inc. v. PSI Energy, Inc.,* 894 N.E.2d 1055, 1063 (Ind.Ct.App.2008) (quot-

---

**2.** These payments amounted to $845.74 per month. The Agreed Statement of Record incorrectly lists the present premium payment amount at $874.74. The trial court's Order on March 29, 2009 and the actuarial data provided by Anne both list the correct $845.74 amount which was the basis for Anne's arriving at $101,556 as the benefit's present value.

ing *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele,* 766 N.E.2d 699, 703–704 (Ind.2002)), *reh'g denied.* If a statute is unambiguous, we must give the statute its clear and plain meaning. *Id.* A statute is unambiguous if it is not susceptible to more than one interpretation. *Id.* However, if a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Id.* We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.*

We have not previously addressed whether post-retirement health insurance premium payments paid for by a former employer qualify as marital asset "property" under Ind.Code § 31–9–2–98. However, our case law provides us with relevant principles that we shall apply to the instant question. For the purposes of dissolution proceedings, Indiana defines "property" as:

> [A]ll the assets of either party or both parties, including:
>
> > (1) a present right to withdraw pension or retirement benefits;
> >
> > (2) *the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested* (as defined in Section 411 of the Internal Revenue Code) but that are payable after the dissolution of marriage; and
> >
> > (3) the right to receive disposable retired or retainer pay (as defined in 10 U.S.C. 1408(a)) acquired during the marriage that is or may be payable after the dissolution of marriage.

Ind.Code § 31–9–2–98(b) (emphasis added). For marital assets that are not divisible, it is proper for a trial court to "divide the property in a just and reasonable manner by ... setting the property or parts of the property over to (1) of the spouses and requiring either spouse to pay an amount, either in gross or in installments, that is just and proper...." Ind.Code § 31–15–7–4(b)(2).

Anne appears to argue that the health insurance premium payments fall under subsection (2) as a retirement benefit not forfeited upon the termination of employment. "Vested pension rights have been described as 'intangible assets of a spouse which have been earned during the marriage, either through the contributions of the spouse which otherwise would have been available as assets during the marriage, or through contributions of the employer which constitute deferred compensation.'" *In re Marriage of Preston,* 704 N.E.2d 1093, 1097 (Ind.Ct.App.1999) (quoting 2 Homer H. Clark, Jr., The Law of Domestic Relations in the United States § 16.6, at 208 (2d ed.1987)).

Anne cites to several Indiana cases which have found pension benefits to be marital assets. In *Hill v. Hill,* at issue was husband's $2,600 per month pension payments. 863 N.E.2d 456, 459–460 (Ind. Ct.App.2007). We summarily held that "[a]s Husband is currently receiving payments from his pension plan, he clearly has 'a present right to withdraw pension or retirement benefits' under [Ind.Code § 31–9–2–98(b)(1) ]," and that therefore the pension constituted a marital asset. *Id.* at 461. Similarly, in *In re Marriage of Nickels,* we held that wife's pension, which was valued at $544 per month, was subject to distribution. 834 N.E.2d 1091, 1097 (Ind.Ct.App.2005). Anne also cites *Hendricks v. Hendricks,* which subjected the portion of pension payments which had accrued during the marriage to marital distribution. 784 N.E.2d 1024, 1027 (Ind. Ct.App.2003). *See also Wyzard v. Wyzard,* 771 N.E.2d 754, 757 (Ind.Ct.App.

2002) (husband's vested pension benefits, totaling between $340,897.49 and $518,174, were subject to marital distribution); *In re Marriage of Preston,* 704 N.E.2d at 1097–1098 (husband's retirement benefits, including a monthly annuity for life, was a marital asset).[3]

■ The trial court determined that Charles's employer-paid health insurance premiums were not a marital asset subject to division. We agree. The cases cited by Anne are all similar in that they involve monthly monetary payments made directly to the pension-holding spouse. Here, Charles's benefit was not payable to him. Further, Charles could not elect to have his stipend increased in lieu of the premium payments; rather, the benefit was non-elective and not subject to divestiture, division or transfer.

We find two cases read in tandem to be particularly instructive on this issue. First, both parties discuss *Gnerlich v. Gnerlich,* 538 N.E.2d 285 (Ind.Ct.App. 1989), *trans. denied.* In *Gnerlich,* husband received disability benefits from his former employer which he contended were erroneously included in the marital estate. *Gnerlich,* 538 N.E.2d at 285–286. Husband "became entitled to these benefits

because he made monthly contributions . . . through a disability retirement plan offered through his employer. . . ." *Id.* at 286. We affirmed the trial court's inclusion of the benefit in the marital estate, holding that "[t]he value of William's disability pension is readily ascertainable and susceptible to division." *Id.* at 288.

More recently we again looked at disability benefits in *Antonacopulos v. Antonacopulos,* 753 N.E.2d 759 (Ind.Ct.App. 2001). In *Antonacopulos,* we examined *Leisure v. Leisure,* 605 N.E.2d 755 (Ind. 1993), in which the Indiana Supreme Court "included . . . a discussion of *Gnerlich* and thereby implicitly limited our holding in *Gnerlich." Antonacopulos,* 753 N.E.2d at 761. We noted that "the benefits in *Gnerlich* were a marital asset subject to distribution because, in order to obtain the insurance policy coverage, the husband used marital assets to make the monthly payments, thus depriving the family of the use of those funds." *Id.*

■ The underlying principle applied in *Gnerlich* and *Antonacopulos* is that insurance policy coverage as a part of an employee's retirement package may be included in the marital estate only when marital assets were used to obtain the benefits.[4] Benefits which are purely sup-

---

3. Anne also cites authority from other jurisdictions which she contends support the inclusion of the employer-paid health insurance premium payments in the marital pot. Anne first cites a pair of cases from the Supreme Court of Alaska, *Hansen v. Hansen,* 119 P.3d 1005 (Alaska 2005), and *Kinnard v. Kinnard,* 43 P.3d 150 (Alaska 2002). These cases are readily distinguishable, however. *Kinnard* involved one spouse cancelling the health insurance coverage for the other spouse from a joint health insurance plan, rather than using actuarial data to value an employer contribution to premium payments. *Kinnard,* 43 P.3d at 156. *Hansen* concerned retirement benefits that were earned prior to the marriage which were cashed out and subsequently repurchased with marital assets. *Hansen,* 119 P.3d at 1014. The court held that "the bene-

fit is, therefore, at least in part a marital asset," to the extent that marital funds were used to acquire the benefit. *Id.* at 1015.

 The other two cases cited by Anne, *Walek v. Walek,* 193 Misc.2d 241, 749 N.Y.S.2d 383 (2002), and *Weller v. Weller,* 2005 WL 3528904 (Ohio Ct.App.2005), both involved spouses who were using marital assets in order to obtain their health insurance coverage. *Walek,* 749 N.Y.S.2d at 385; *Weller,* 2005 WL 3528904 * 1. We find these cases distinguishable because they involved the health insurance coverage itself in which marital assets were being spent to pay for the coverage.

4. The Indiana Supreme Court recently analyzed these same cases in *Severs v. Severs,* 837 N.E.2d 498 (Ind.2005). In *Severs,* the Court

plemental, i.e., not purchased/obtained using marital assets, non-elective and not subject to divestiture, division, or transfer are properly excluded from the marital estate.[5]

We note finally that in its order the trial court relied upon *Metro. Life Ins. Co. v. Tallent* in deciding that the health care premium payments were not a marital asset. The trial court found that Charles's "health insurance benefit (payment of premiums) is similar in nature to a term life insurance policy provided by an employer with *no cash surrender value*. Such a benefit is not marital property." Appellant's Appendix at 25 (citing *Tallent*, 445 N.E.2d at 990) (emphasis added).

In *Tallent*, the Indiana Supreme Court applied a now-superseded definition of property in holding that an employer-provided group term life insurance policy was not a marital asset. *Tallent*, 445 N.E.2d at 993. *Tallent* was decided prior to statutory amendments enacted in 1985 which changed the landscape of Indiana dissolution property division. In 1983, when *Tallent* was decided, the definition of "property" in Indiana was: "all the assets of either party or both parties, including a *present right to withdraw pension or retirement benefits." Id.* at 991; Ind.Code § 31–1–11.5–2(d) (Burns 1980) (emphasis added). The emphasized portion of the property definition is now codified as subsection (b)(1) of the current definition. Ind.Code § 31–9–2–98(b)(1). *Tallent* applied *Wilson v. Wilson,* 409 N.E.2d 1169 (Ind.Ct.App.1980), which held: "[W]here the pension is not present or vested in that the retiree must survive in order to receive the next periodic payment and is not entitled to receive payment on demand, the pension is not marital property which can be divided or awarded to the other spouse under I.C. § 31–1–11.5–11." 409 N.E.2d at 1178. In applying *Wilson,* the court held that:

> [T]he group term insurance policy in the case at bar is excluded from the statutory definition of property. The policy had no present value. While in *In Re Marriage of McDonald,* (1980) Ind.App., 415 N.E.2d 75, a life insurance policy was termed an asset and was awarded to one of the parties, that policy had a cash surrender value. In the case at bar, the policy had no such value. The policy as a benefit of employment, was undoubt-

---

held that "under these authorities, a future income stream may be a marital asset to the extent that either marital assets were used to acquire the future income or the income is future compensation for past services, as opposed to replacement for lost earning capacity due to disability." 837 N.E.2d at 500. Even if the benefit at issue may be considered "future compensation for past services," however, we do not believe that *Severs* directly speaks to the asset in the instant case because it is not properly classified as a "future income stream." Here, the asset comes in the form of health insurance premium payments which are made directly from the former employer to the health insurance provider; therefore Charles never actually obtains a "future income stream" from his former employer.

5. A California Court of Appeal recently ruled on a case involving similar facts. In *Ellis v. Ellis,* 101 Cal.App.4th 400, 124 Cal.Rptr.2d 719 (2002), husband was entitled to a post-retirement subsidy from his former employer to help pay his health insurance premiums. *Id.* at 722–724. The court, relying on *In re Marriage of Havins,* 43 Cal.App.4th 414, 50 Cal.Rptr.2d 763 (1996), held that the subsidy was not part of the marital estate. *Ellis,* 124 Cal.Rptr.2d at 725. The court noted that there were several possible rationales for the holding in *Havins,* including: "[T]he right to subsidized health insurance is not convertible to cash; some fringe benefits of undisputed value to the employee or retiree are simply not divisible for the benefit of the spouse upon divorce (e.g., a right to a discount at an employer-owned cafeteria or store)...." *Id.* at 724.

edly contingent on continued employment. Payment of policy proceeds was contingent on the insured's death. Because there was no present right to withdraw or to receive any benefits, the policy was not property under the statute.

*Tallent,* 445 N.E.2d at 991.

Thus, the reasoning in *Tallent* was based on the fact that the policy had "no present value" because it did not contain a "cash surrender value." "Cash surrender value" is defined as "[t]he amount of money payable when an insurance policy having cash value, such as a whole-life policy, is redeemed before maturity or death." BLACK'S LAW DICTIONARY 1586 (8th ed.2004). However, nowhere does our current statutory framework require pension or retirement assets to have a cash surrender value in order to be counted as a marital asset. We find that the holding of *Tallent* was based on a now-superseded definition of "property." In the instant case, we are concerned with subsection (b)(2) of the current property definition which does not require the asset to possess a cash surrender value in order for it to be included in the marital pot. We therefore do not find *Tallent* instructive. *See Schueneman v. Schueneman,* 591 N.E.2d 603, 607–608 (Ind.Ct.App.1992) (holding that, after the 1985 amendments, the scope of pensions considered marital assets was expanded beyond those which "have a present right to receive any money from it").

For the foregoing reasons, we affirm the trial court's determination that Charles's employer-paid health insurance premiums were not a marital asset subject to division.

Affirmed.

MAY, J., concurs.

CRONE, J., concurs in result with separate opinion.

CRONE, Judge, concurring in result.

I agree with the majority's conclusion that Charles's employer-paid post-retirement health insurance premiums are not a marital asset subject to division. I write separately, however, because I reach that conclusion by a different route.

To reiterate, Indiana Code Section 31–9–2–98(b) defines "property" for purposes of dissolution proceedings as follows:

[A]ll the assets of either party or both parties, including:

(1) a present right to withdraw pension or retirement benefits;

(2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested (as defined in Section 411 of the Internal Revenue Code) but that are payable after the dissolution of marriage; and

(3) the right to receive disposable retired or retainer pay (as defined in 10 U.S.C. 1408(a)) acquired during the marriage that is or may be payable after the dissolution of marriage.

Initially, I note that the Internal Revenue Code differentiates between "retirement benefits" (such as Charles's monthly stipend) and "medical benefits" (such as the health insurance premiums). *See* 26 U.S.C. § 411(a)(9) (stating that a "normal retirement benefit shall be determined without regard to ... medical benefits"); *see also* 26 U.S.C. § 401(h) (stating that "a pension or annuity plan may provide for the payment of benefits for sickness, accident, hospitalization, and medical expenses of retired employees, their spouses and their dependents, but only if ... such benefits are subordinate to the retirement benefits provided by the plan"). "Retirement benefits" may qualify as vested un-

der Section 411, but "medical benefits" may not.

This raises the question of whether the Indiana General Assembly intended to define "retirement benefits" and "vested" in terms of the Internal Revenue Code. As it is currently written, Indiana Code Section 31–9–2–98(b) does not answer this question. In fact, its inartful drafting raises additional questions that have no easy answers. If the legislature did intend to define "retirement benefits" and "vested" in terms of the Internal Revenue Code, then the health insurance premiums at issue would not be considered "retirement benefits" and therefore would not be considered marital property subject to division. If the opposite is true, then we are left with the case law on which the majority relies as guidance for determining whether the premiums are "retirement benefits" that are "vested" under Indiana law. In short, I believe that Indiana Code Section 31–9–2–98(b) is ambiguous and that the legislature should address this ambiguity.[6]

What does seem clear, however, is the legislature's overarching intent that only durable and definable "benefits" be considered marital property subject to division. The health insurance premiums paid by Navistar are a purely contractual right and are contingent upon both Navistar's and Charles's viability.[7] As such, the premiums are more akin to future income, and I think that they would be more appropri-

ately treated by the trial court in the same manner as future earnings ability. It is well settled that "a trial court may not divide the future earnings of a party in anticipation that they will be earned." *Shannon v. Shannon*, 847 N.E.2d 203, 205 (Ind.Ct.App.2006), *trans. denied* (2007).[8] Based on the foregoing, I concur in result with the majority's affirmance of the trial court's dissolution order.

---

**6.** If the legislature did intend to define "retirement benefits" and "vested" in terms of the Internal Revenue Code, then one might argue that Indiana Code Section 31–9–2–98(b)(2) should be worded as follows: "the right to receive pension or retirement benefits that are not forfeited upon termination of employment *and* that are vested (as defined in Section 411 of the Internal Revenue Code) but that are payable after the dissolution of marriage[.]" (Emphasis added.)

**7.** Should Navistar become insolvent, Charles's defined benefit pension would be protected under the federal Employee Retirement Income Security Act ("ERISA"). The health insurance premiums would not be protected, however.

**8.** It is also worth noting that the premiums are not subject to division by a qualified domestic relations order ("QDRO").